WESLEY H. EYRES, Appellant, v. R. J. KOEHLER et al., Appellees.

No. 40806.

June 20, 1931.

Rehearing Denied October 5, 1931.

Nelson Miller, for appellant.

Roseberry & Roseberry, for appellee.

◼ Kindig, J.—In August, 1928, the defendant-appellee, R. J. Koehler, was duly appointed trustee under the will of Michael Madden. There were certain beneficiaries of this trust. Included in the property of the trust estate coming into the hands of the appellee, Koehler, as such trustee, were two mortgages covering certain Plymouth County real estate. Those mortgages became due but were not paid by the obligors, and consequently the appellee, Koehler, as trustee, instituted an action in the district court to foreclose the mortgages and obtain the appointment of a receiver to collect the rents and profits from the land during the year of redemption. Accordingly, on December 7, 1928, the mortgages were foreclosed, and Koehler was appointed receiver to collect the rents and profits from the land during the period named. Thereafter special execution issued and the foreclosure sale was held January 11, 1929. Wesley H. Eyres, the plaintiff-appellant in the case at bar, became the purchaser of the mortgaged land at said sale. This present action has to do with a controversy over taxes that were a lien on the land when bought by the appellant.

So far as material, the record concerning the taxes is as follows: On December 3, 1928, four days prior to the judgment rendered, as aforesaid, A. Langhout, defendant-appellee, then treasurer of Plymouth County, held the annual tax sale of lands for the 1927 unpaid taxes. At that sale, the appellee, Koehler,

1292

individually was a bidder and to him the appellee, treasurer, sold the mortgaged land in question. Through mistake, the tax sale certificate was given, not to Koehler individually, but, to him as receiver. Because Koehler at the time was trustee, as before explained, under the Madden will, as well as receiver under the mortgage foreclosure, appellant contends that when he bought the mortgaged premises at the foreclosure sale he received all the title held not only by the mortgagor, but by the beneficiaries under the trust as well. Carrying the thought a step further, appellant insists that Koehler, under the law, must have been acting in his capacity as trustee when he purchased the tax sale certificate, and therefore such purchase inured to the benefit of the beneficiaries. Having thus inured to their benefit, appellant concludes that he, as purchaser of the land under the foreclosure sale, is entitled to the tax sale certificate. There is also an argument on appellant's part advanced upon the theory that appellee, Koehler, when buying the tax sale certificate, in effect redeemed the property from tax sale for the benefit of the appellant under his purchase through the foreclosure sale. Furthermore, appellant makes the contention that the tax sale was fraudulent in that the bidders agreed not to compete with each other.

I. A careful review of the record convinces us that the appellee, Koehler, purchased the land in question through the tax sale not as trustee, or receiver. Such purchase was made by Koehler as an individual only. Due to some error, the county treasurer erroneously wrote Koehler's name in the certificate as receiver, but under the record Koehler, as receiver, had neither authority, nor money with which, to buy the tax certificate. His intention was to obtain the certificate as an individual. Upon this question the evidence is clear and explicit. Nevertheless, as before explained, appellant maintains that Koehler, in obtaining the certificate as an individual, in effect did so for and in behalf of the beneficiaries under the trust. Otherwise, appellant claims, the trustee would defraud the beneficiaries.

It is not necessary under this record to discuss the law relating to the duties of a trustee to the beneficiaries. Under the circumstances here presented, the beneficiaries alone can raise that question. Hoyt v. Hampe, 206 Iowa 206 (local citation, 220); Buell v. Buckingham, 16 Iowa 284 (local citation, 293).

See also Fryer v. Harker, 142 Iowa 708. During our discussion in the Hoyt case (206 Iowa 206), we said, reading on page 220:

"The policy of the law is to put fiduciaries beyond the reach of temptation, by making it unprofitable for them to yield to it. To that end, an act by the fiduciary in which personal interest and duty conflict, is avoidable at the mere option of the beneficiary, regardless of good faith or results."

The beneficiary, however, has the option to confirm or avoid the action of the trustee. If the beneficiary desires to adopt the trustee's action as being fully authorized, he may do so. That action by the trustee is not void "ab origine and absolutely." But rather, this action of a trustee is voidable only. In the Buell case (16 Iowa 284), supra, we said upon this subject:

"Now the purchase of property by an agent or trustee, or by any person acting in a fiduciary capacity, is not void *ab origine* and absolutely. It is voidable only. It is made subject to the right of the principal or beneficiary, in a reasonable time, to say that he is not satisfied with it. It is valid in equity as well as law, unless the parties interested repudiate it, or complain of it; and these may set it aside without showing either fraud or injury. * * * As the principal or parties interested may confirm the sale, a mere stranger cannot make the objection, that the trustee was the purchaser; or that the sale was irregular. *The remedy belongs only 'to persons who had an interest in the property before the sale, and no other person can apply to set aside the sale.'*" (The italics are ours).

No indication or suggestion is intended to the effect that the appellee, Koehler, in any way violated his duties as trustee when he purchased the land at tax sale. Regardless of that, however, the only persons who could complain in any event are the beneficiaries themselves. Appellant had no interest in the land when the appellee Koehler purchased at tax sale and received the tax certificate. Consequently, the question of ratifying, or in any event avoiding, the trustee's action is a matter wholly within the authority of the beneficiaries. They have not complained of the trustee's action and are not objecting now. Repudiation has not been made by these beneficiaries and they, so far as shown by the record, are entirely satisfied. Whatever

option the beneficiaries had to set aside Koehler's tax sale purchase and disapprove the same has not been exercised. Such repudiation cannot be made by appellant. Neither can appellant complain because the beneficiaries did not object or take steps to avoid the trustee's action. Whatever liability, if any, the appellee Koehler, as trustee, may owe to his beneficiaries is not important now. This liability, if any exists, is a matter which concerns Koehler and the beneficiaries alone.

Resultantly, appellant has no right to interfere or complain. Having purchased the land, then, at tax sale as an individual, the appellee Koehler is still entitled to enforce his certificate. Fraud is not shown. Before the mortgage foreclosure sale was completed, Koehler informed appellant that the taxes had not been paid. Not only that, but the records of Plymouth County clearly revealed the fact that the taxes in question had not been paid. As such purchaser, appellant was duty bound to inspect and know the record. Keefe v. Cropper, 196 Iowa 1179 (local citation, 1183). Therefore, the tax sale certificate in the hands of the appellee, Koehler, is valid and the district court properly refused to cancel the same.

Whether the tax sale certificate would have been void or subject to cancellation had the tax sale purchase been made for or on behalf of the beneficiaries, we do not now decide.

██ II. Continuing his argument at this point, the appellant says that in any event the purchase of the tax sale certificate by the appellee, Koehler, amounted to a redemption of the taxes. That conclusion is supported, appellant asserts, by the following cases: Dickinson v. White, 64 Iowa 708; Eck v. Swennumson, 73 Iowa 423; and Beacham v. Gurney, 91 Iowa 621.

Manifestly this contention is not well-founded. The principle announced in the cited cases is that where several claimants have liens on a single piece of land, one of them cannot defeat the others' rights by purchasing the land at tax sale. A tax sale purchase under those circumstances would amount to a redemption of the land for the benefit of all the lien holders. Of course, the redemptioner would have a preferred lien to the extent of the sum thus paid to redeem. To illustrate, we said in Lane v. Wright, 121 Iowa 376, reading on page 377:

"We regard it as a well-settled proposition under the de-

cisions of this court that, where several persons hold claims which are liens upon the same land, equity will not permit one of the lienholders to absorb the common fund by purchasing the land at tax sale."

If, however, redemption, as we above found, was not accomplished by the beneficiaries, but rather the appellee, Koehler, as an individual in his own behalf made the tax sale purchase, necessarily the principle announced in the foregoing cases does not apply.

III. There is a further contention made by appellant to the effect that the tax sale was void and therefore the certificate given thereunder can have no validity. This claim, appellant insists, arises because the bidders at the tax sale connived and agreed that there should be no competition. Appellant fails to establish the essential facts in this regard. After carefully reading the evidence, it is apparent that appellant has not furnished the necessary proof.

Under the record, therefore, there is no basis for setting aside or cancelling the tax sale certificate and the judgment and decree of the district court should be, and hereby is,—Affirmed.

ALBERT, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.