HAWKEYE LIFE INSURANCE COMPANY, Appellee and Cross-Appellant, v. VALLEY-DES MOINES COMPANY et al., Appellants; POLK COUNTY et al., Appellees.

No. 42704.

MAY 7, 1935.

REHEARING DENIED NOVEMBER 22, 1935.

Hughes, O'Brien & Faville and I. H. Tomlinson, for appellants.

Harding, Ruffcorn & Jones, H. W. Hanson, and Vernon A. Vrooman, for appellee and cross-appellant.

Carl A. Burkman, County Attorney, for Polk County and Allen Munn.

ALBERT, J.—The fact situation in this case is somewhat complicated, although the legal questions involved are not very numerous.

The J. Locke Macomber Company was the owner of lot 18, division 1, in Grimmell's addition to the town of Fort Des Moines (now a part of the city of Des Moines), in July, 1923, at which time a mortgage for $10,000 was executed by the company to one Blattenburg, who, on the 10th of July following, assigned said mortgage to the Valley National Bank. The mortgage and assignment were duly recorded.

At the regular tax sale in December, 1926, this property was sold, and was purchased by one E. W. Morgan, to whom the tax certificate was issued and by him duly assigned to the Valley National Bank or the Valley Investment Company. In due time a tax deed was issued, on May 20, 1932, to the Valley Investment Company. On June 30, 1931, in the district court of Iowa in and for Polk county, the aforesaid $10,000 mortgage to the Valley National Bank was foreclosed and decree entered thereon. In this proceedings, among other defendants was the city of Des Moines. In this decree it was provided, among other things, that the general taxes and special assessments "are decreed to be liens against said property prior to the plaintiff's mortgage." Execution sale was had and the property sold for $16,742.50, but no deed was issued on said sale.

Following this an action in equity was brought to quiet title

and remove tax liens. This action was entitled "Valley-Des Moines Company, Plaintiff, v. City of Des Moines, Polk County, Iowa, County of Polk in the State of Iowa, and Allen Munn, Treasurer of Polk County, Iowa, Defendants." On final trial of said cause a decree was entered on the 19th day of May, 1933, in which it was found, among other things, "that the plaintiff is the absolute and unqualified owner in fee simple" of the property in controversy herein, and that plaintiff's title to said property was derived through, under, and by virtue of the tax deed hereinbefore referred to, and that the Valley-Des Moines Company obtained title to said property by warranty deed executed by the Valley Investment Company to it on the 10th of January, 1933. It then finds and decrees that assessment No. 1275, dated July 1, 1924, for the opening of Fifth avenue from Chesnut street to School street, assessed against lot 18, division 1, Grimmell's addition (and certain other special assessments against the property), and the liens created thereby, are "effectually barred and cut off by said tax sale and plaintiff's said tax deed, and that said special assessments should be cancelled, and the defendants, City of Des Moines and Allen Munn, Treasurer of Polk County, should be forever enjoined and restrained from enforcing or attempting to enforce the collection of said special assessments against the plaintiff's said real estate. * * * It is further hereby ordered, adjudged and decreed that all unpaid installments of the special assessments hereinbefore and hereinafter set forth be and they hereby are cancelled as liens against said property, to wit, * * * Street Opening Certificate No. 1275, dated July 1, 1924, * * * the defendants, City of Des Moines, Iowa, and Allen Munn, Treasurer of Polk County, Iowa, * * * are permanently enjoined and restrained from enforcing or attempting to enforce the collection of the unpaid installments of said special assessments against said real estate."

On the 25th of August, 1933, a petition in equity was filed in the case at bar, in which it is pleaded that the city of Des Moines regularly and duly levied a special assessment against the property involved herein, under special assessment certificate No. 1275, and it is alleged that "there are two installments now due and delinquent which, with interest and penalty, amount to $1083.79", and that the defendants "have or claim to have some right, title, or interest in and to said real estate, but that same is junior, inferior, and subsequent to the plaintiff's lien of the

certificates declared on." In the second count an attack is made on the tax deed first above referred to, alleging that "at and subsequent to the time of the sale the Valley National Bank was the owner and holder of the $10,000 mortgage, and that the plaintiff had no notice of the expiration of the time of redemption from said tax sale." The third count makes counts 1 and 2 a part thereof, and alleges that the Valley Investment Company attempted to convey by warranty deed the real estate described to the Valley-Des Moines Company. In the fourth count it is alleged that the plaintiff herein had no knowledge or notice of the pendency of the action to quiet title hereinbefore referred to, and that the tax sale was a violation of law and the deed conveyed no title thereunder. The petition prays that the "special assessment certificate declared on herein be established and declared as a lien against the real estate described herein, superior and paramount to the right, title, and interest of the defendants and each of them therein"; that same be foreclosed; that the tax deed to the Valley Investment Company be vacated, set aside, and held for naught; and that the decree in the equity case to quiet title be declared null as against the plaintiff, as well as the tax deed to the Valley Investment Company. The defendant Polk county filed a cross-petition claiming a lien for unpaid personal taxes. By amendment to its petition plaintiff alleges that the original tax sale certificate issued to E. W. Morgan by the treasurer of Polk county was really assigned to the Valley National Bank, and that this assignment was changed by some unknown person to read "to the Valley Investment Company", without the knowledge or consent of Morgan; and that at the time the said certificate was assigned by Morgan to the Valley National Bank the bank was the owner and holder of the mortgage foreclosed on, and that the purchase of said tax certificate by the bank merged the lien of the tax sale in the mortgage, and thereby the sale was canceled and the Valley Investment Company has no right to attempt to take a tax deed to the property, and that the tax deed to the Valley Investment Company was void and obtained by misrepresentation of the actual facts. The defendants answered by way of amendment, and, among other things, stated that the special assessment certificate in controversy herein is made payable to the city of Des Moines, the payee named therein; that said assessment certificate is a nonnegotiable instrument, and if the plaintiff acquired the same from the city

of Des Moines, it took the same subject only to such rights as the city of Des Moines had in and to said certificate, and that it was at all times in privity with the city of Des Moines, and its rights were at no time better than or superior to the rights of said city of Des Moines under said special assessment certificate. Plaintiff failed to record the assignment of said assessment certificate from the city of Des Moines, and the defendants allege that at no time prior to the commencement of the action to quiet title by the Valley-Des Moines Company and the entry of the decree therein did they have any notice, either constructive or actual, of said assessment certificate under which the plaintiff claims, or that the Valley National Bank was or claimed to be the owner or holder of said certificate, and they knew of no other person owning or having any interest in said certificate, and believed the same to be held solely by the city of Des Moines.

The record shows that the Hawkeye Insurance Company purchased this certificate on September 3, 1930. There is nothing in the record to show that the same was duly assigned by the city of Des Moines to the purchaser, but we take it from the argument that both parties treat this certificate in the hands of the plaintiff as though it were duly assigned in writing, and we shall treat it the same way.

Defendants allege that the adjudication in the quieting title action under date of January 25, 1933, and entered on May 19, 1933, is an adjudication binding upon the plaintiff, and that the plaintiff's rights in and to said property have all been adjudicated and cut off by said decree, and the plaintiff is estopped to assert that the tax deed issued to the Valley Investment Company is void and is estopped to assert any claim that the title to the property hereinbefore described is not vested in the Valley-Des Moines Company free and clear of any claims thereon on the part of the plaintiff; and that said assessment certificate under which the plaintiff claims was not acquired by the plaintiff from the city of Des Moines until after the tax sale certificate, or tax deed, was issued by Allen Munn, county treasurer, and further alleges that no assignment of the instrument under which plaintiff claims was ever filed for record in the office of the county recorder of Polk county, and that said certificate is an instrument conveying real estate within the provisions of section 10105 of the Code of 1931. Attack is further made on the tax sale and deed under allegations that the purchaser, Morgan, was

an employee of the Macomber Company, and that through an arrangement between the county treasurer, the Macomber Company, and the Valley National Bank, the Valley National Bank furnished the money (while it was the owner and holder of the $10,000 mortgage) to buy the property in at tax sale, using Morgan as a dummy purchaser, and that thereafter the Valley National Bank in fact paid these taxes and the sale was void by reason thereof.

The pleadings in this case cover twenty-nine pages of the abstract, but the foregoing constitutes a summary thereof.

One of the major questions raised by the appellants is whether or not the action heretofore referred to to quiet the title to this property is binding on the plaintiff. It is conceded by all parties concerned that in said action to quiet title the plaintiff herein was not made a party defendant. It is also settled that in this jurisdiction, as well as all others, the general rule is that where a person is not made a party to an action the decree entered therein is not binding on him. To this there is one exception, and that is that where the party raising this question was in privity with a party who was properly made a party to the action, then, by reason of such privity, the party who is attacking the judgment is bound, the same as though he were named as a party to the action.

This attack upon the decree in the action to quiet title, of course, is collateral. See Smith v. Smith, 22 Iowa 516; Mahoney v. State Ins. Co., 133 Iowa 570, 110 N. W. 1041, 9 L. R. A. (N. S.) 490; Van Gorder v. Hanna, 72 Iowa 572, 34 N. W. 332. It cannot avail if the original decree is binding on the plaintiff. But, even though it be collateral, if the plaintiff can show that the court entering said decree had no jurisdiction of the defendants, then this attack may be successfully made.

■ ■ ■ In order to sustain a plea of *res adjudicata*, it must be shown that in the proceedings in which the judgment or decree was entered, the party sought to be bound was actually made a party, or that he stood in privity to one who was a party to that action. Hultz v. Zollars, 39 Iowa 589; Adams County v. Graves, 75 Iowa 642, 36 N. W. 889; McCullough v. Connelly, 137 Iowa 682, 114 N. W. 301, 15 L. R. A. (N. S.) 823; Weiser v. Ross, 150 Iowa 353, 130 N. W. 387; Leach v. First National Bank of Fort Dodge, 206 Iowa 265, 217 N. W. 865; 34 C. J., p. 1009, section 1431. Privity means a mutual or successive relationship to the

same rights of property. McConnell v. Poor, 113 Iowa 133, loc. cit. 138, 84 N. W. 964, 52 L. R. A. 312; McDonald & Co. v. Gregory, 41 Iowa 513; Leach v. First National Bank of Fort Dodge, 206 Iowa 265, loc. cit. 270, 217 N. W. 865. It is also another well-settled rule that, in order to make such judgment or decree binding, the rights of the party sought to be bound must accrue subsequently to the commencement of the suit. 34 C. J., p. 1012, note 10. By analogy, see Cedar Rapids Cold Storage Co. v. Lesinger, 188 Iowa 1364, 177 N. W. 548. One is not privy to a judgment where his succession to the rights of property thereby affected occurred previously to the institution of the suit. Doctor Jack Pot Mining Co. v. Marsh (D. C.), 216 F. 261; Chester v. Bakersfield Town Hall Assn., 64 Cal. 42, 27 P. 1104. The rule seems quite clearly stated in Leach v. First National Bank of Fort Dodge, 206 Iowa 265, 217 N. W. 865, where we said:

"Privity is said to be a mutual or successive relationship to the same rights of property, and if it is sought to bind one as privy by an adjudication against another with whom he is in privity, it must appear that at the time he acquired the right, or succeeded to the title, it was then affected by the adjudication, for, if the right was acquired by him before the adjudication, then the doctrine cannot apply."

Applying these rules to the situation before us, it appears that the plaintiff acquired this special improvement certificate on the 3d of September, 1930, and the judgment in the action to quiet title, in which the decree in controversy is involved, was entered on the 19th day of May, 1933. Hence, under the rule above set out, the plaintiff did not acquire his title after the decree was entered, but had acquired it long prior thereto. It follows, therefore, that the decree entered in the quieting title case is not binding on the plaintiff.

The case of Beh v. Bay, 127 Iowa 246, 103 N. W. 119, 109 Am. St. Rep. 385, is clearly distinguishable on the facts; and the same may be said of the case of Lee v. School District, 149 Iowa 345, 128 N. W. 533, 37 L. R. A. (N. S.) 383.

▮▮▮ Defendants next insist that the court erred in entering a decree canceling the treasurer's tax deed under which the defendants claim. This tax deed is assaulted from three different directions: (1) It is asserted that the tax deed is void because the original issue of the tax certificate on the sale was fraudu-

lent, in that, through an arrangement between the mortgage holder and the title holder, the purchaser at the tax sale was an employee of the title holder, and the mortgagee furnished the money to bid in at the tax sale; and there was an understanding between the county treasurer and the title holder that at the sale the property was to be struck off to the employee of the title holder. (2) The original certificate of sale was issued to E. W. Morgan, an employee of the title holder, and was by him assigned to the Valley National Bank (the mortgagee); and some one, without the knowledge or consent of Morgan, changed the assignment to read "to the Valley Investment Company", and the tax sale deed was subsequently issued by the treasurer to the Valley Investment Company. (3) Subsequently to the receipt of the deed by the Valley Investment Company, that company conveyed the property by full warranty deed to the Valley-Des Moines Company. Summarized, these contentions amount to this: That the tax sale, which resulted in the tax deed, was in fact no more than a payment of the taxes by the mortgagee, and therefore there was no power to issue the tax deed; in other words, that the tax deed is void because of said matters.

It seems to be the well-settled rule in this state that neither a mortgagor nor a mortgagee can obtain a valid tax title to the exclusion of other lienholders. Porter v. Lafferty, 33 Iowa 254; Bowen v. Kurtz, 37 Iowa 239; Stears v. Hollenbeck, 38 Iowa 550; Fair v. Brown, 40 Iowa 209; Dickinson v. White, 64 Iowa 708, 21 N. W. 153; Eck v. Swennumson, 73 Iowa 423, 35 N. W. 503, 5 Am. St. Rep. 690; National Surety Co. v. Walker, 148 Iowa 157, 125 N. W. 338, 38 L. R. A. (N. S.) 333. This rule is bottomed on the further rule that a purchase at a tax sale by either the mortgagor or the mortgagee is payment of the taxes due. Wood v. Schwartz, 212 Iowa 462, 482, 236 N. W. 491; Eyres v. Koehler, 212 Iowa 1290, 237 N. W. 351; Lane v. Wright, 121 Iowa 376, 96 N. W. 902, 100 Am. St. Rep. 362; Manning v. Bonard, 87 Iowa 648, 54 N. W. 459. It seems to be well settled also that it is immaterial whether the mortgagee or mortgagor is a direct purchaser at the tax sale, or whether he acquires the certificate of purchase from the bidder at the sale. In either event, no tax deed could be issued on such certificate. Dickinson v. White, 64 Iowa 708, 21 N. W. 153; Eck v. Swennumson, 73 Iowa 423, 35 N. W. 503, 5 Am. St. Rep. 690; Wood v. Schwartz, 212 Iowa 462, 482, 236 N. W. 491; Eyres v. Koehler,

212 Iowa 1290, 237 N. W. 351. We are satisfied from the showing in the record here that the bidder at this tax sale (E. W. Morgan) was the employee of the title holder; and that an arrangement was made between the title holder and the mortgagee that the mortgagee would (and it did) furnish the money to buy this property in at the tax sale; that the certificate was to be issued to E. W. Morgan and then to be transferred to the mortgagee. There is some contention as to whether the statement thus made is exactly accurate, or whether the mortgagee furnished the money to the mortgagor which was used to pay the taxes by the bidder at the tax sale. In either event, the result is identically the same; that is to say, that the transaction, as related in the evidence, brings it within the rule above stated,—to wit, that when the money was paid to the county treasurer on the bid made by Morgan, under the law this was a payment of the taxes (either by the mortgagor or the mortgagee, as you may choose to view it), and, the taxes being thus paid, as a law proposition, there could be no tax deed legally issued.

This disposes of two defenses made by the defendants herein.
■■■ A third defense arises from this situation: The improvement certificate sued on herein was issued by reason of certain street improvements on Fifth Avenue in Des Moines. It is issued under statutory provisions, which provide for the issuance of such certificates by the municipality. Section 6104 of the Code of 1931 provides:

"The council may provide by resolution for the issuance of street improvement and sewer certificates payable to the bearer or to the contractors who have constructed any street improvement or sewer or completed part thereof, in payment or part payment therefor and may negotiate the same."

Under the record in this case, the improvement certificate in controversy was issued to the city of Des Moines, and, as heretofore stated, said certificate was purchased by the plaintiff on the 3d of September, 1930. The defendants insist, however, that under the statutes of the state, said certificate, when duly issued creates a lien on the property described therein (being the property in controversy herein), and the assignment thereof carries the lien; but that plaintiff cannot assert the lien thus created because plaintiff did not record the same as required by section 10105 of the Code, reading as follows:

"No instrument affecting real estate is of any validity against subsequent purchasers for a valuable consideration, without notice, unless filed in the office of the recorder of the county in which the same lies, as hereinafter provided."

We think this section has no application to the fact situation before us, but if it has, one of the provisions is that the person complaining about a failure to record, as in this statute provided, must show that he was "without notice"; and (passing the question of whether or not the defendants were "subsequent purchasers for a valuable consideration") the record does show that all the defendants had at all times complete and perfect notice of the fact that this certificate was outstanding as against this property. Hence, the provisions of this section of the statute are of no utility as a defense to the defendants. Whether or not, under ordinary circumstances, certificates of this character are required to be entered of record, under the aforesaid section of the Code, is a question on which we express no opinion.

One other question is raised; that is, that the plaintiff has no right to redeem where the property has gone to tax sale, unless it was a former title holder of the property, or had an estate therein. On this point defendants rely on section 7290 of the Code, reading as follows:

"No person shall be permitted to question the title acquired by a treasurer's deed without first showing that he, or the person under whom he claims title, had title to the property at the time of the sale, or that the title was obtained from the United States or this state after the sale, and that all taxes due upon the property have been paid by such person, or the person under whom he claims title."

Having held heretofore in this opinion that the tax deed in controversy was void because issued without power or authority, we think the aforesaid section of the statute has no application to the case before us.

By cross-appeal one other question is raised in this appeal. It is insisted that the plaintiff is not entitled to maintain an action in equity on this certificate.

These certificates were originally authorized by section 841 of the Code of 1897, and the same section appears now as section 6104 in the Code of 1931. The rights of such certificate holder

are defined in the same section of the Code of 1897, and appear now as section 6107 in the Code of 1931, reading as follows:

"Such certificate shall transfer to the bearer all of the rights and interest of the city or town in every such assessment or part thereof, described therein, *and shall authorize the bearer to collect and receive every assessment embraced in the certificate by or through any of the methods provided by law for their collection.* * * *"

It is apparent from the reading of this last section that the right of the holder is limited to "the methods provided by law for their collection."

Prior to the Code of 1897, where this phrase was adopted, the statutory requirements covering the same were in chapter 7 of the Acts of the Twenty-fifth General Assembly. That chapter, among other things, provided that when the assessment was duly entered on the proper tax books of the city, "said assessment shall be collected like other special taxes, as may be provided by the ordinances of such city," (section 11) and that the same "shall be a lien upon the property abutting upon the street or streets," etc. Section 12. It also provided for the issuance of certificates payable to bearer, and further provided that same should be negotiated or transferred to the contractor or assigns, and that in so doing, "* * * all the right and interest of such city, to, in, and with respect to every such assessment, and shall authorize such bearer, contractor or assigns, to receive, *sue for,* collect or have collected, by, or through any of the methods provided by law for the collection of assessments. * * *" Section 15. It will be noticed that, under that provision of the statute, the right to sue on such certificate is specifically provided for.

By reference now to section 6107 of the present Code, it will be noticed that no provision whatever is made for suing on said certificates, and no provision is otherwise made in the Code for suit on same. The fact that the legislature omitted the right to sue on such certificates is rather significant.

Adverting to the origin of the question involved herein, section 816 of the Code of 1897 provided that, after contract has been made by the city for the making or reconstruction of any street improvement or sewer, "the [city] clerk shall file with the auditor of * * * each of the counties * * * a written or printed copy of the notice of the resolution provided for, with a

true copy of the proof of publication thereof, together with a certificate of the clerk that an ordinance or resolution has been adopted directing the making or reconstruction of said street improvement or sewer. Thereupon all special taxes for the cost thereof, or any part of said cost, which are to be assessed and levied against real property, or any railway * * * shall become and remain a lien on such property from the date of the filing of said papers with the county auditor. * * *'' This section of the statute has not been materially changed since the Code of 1897. Section 826 of that Code provided for certification of the levy of such special assessment to be filed with the county auditor, ''and thereupon said special assessment as shown therein shall be placed on the tax list of the proper county.'' Other sections provided for the sale of the property for said special assessments ''with like effect, as in case of sales for the non-payment of ordinary taxes.'' Section 829.

It appears, therefore, that as to these improvement certificates a special method has been marked out by the statute for their payment; that is to say that by following the provisions of the statute, the property on which the lien exists will be sold for the non-payment of taxes in the same manner and with the same force and effect as though there were ordinary taxes against the property, and the amount realized from such sale is to be paid by the treasurer to the holder of the certificate. The method for the collection of these special assessments and the payment of these certificates being thus marked out, we think that, so long as the city follows this method, no action will lie in equity to foreclose the lien therein provided for.

We had before us this question under the mulct tax law, in the case of Crawford County v. Laub, 110 Iowa 355, 81 N. W. 590. We there laid down the rule that, where a specific remedy for the enforcement of a tax lien is provided by the legislature, such remedy must be followed, and resort cannot be had to an equity court to enforce the lien. In other words, the statutory remedy is exclusive. We have followed this rule in Crawford v. Polk County, 112 Iowa 118, 83 N. W. 825; Plymouth County v. Moore, 114 Iowa 700, 87 N. W. 662; Carroll County v. Ley, 127 Iowa 230, 103 N. W. 101; Incorporated Town of Scranton v. Hensen, 163 Iowa 457, 144 N. W. 1024; Hodges v. Tama County, 91 Iowa 578, 60 N. W. 185; Lease v. Vance, 28 Iowa 509; Shearer v. Citizens Bank, 129 Iowa 564, 105 N. W. 1025; United States v.

Chamberlin (C. C. A.), 156 F. 881. An elaborate note may be found on this proposition in 41 L. R. A. (N. S.) at page 730.

We think it follows from this general rule that this court is committed to the doctrine above stated, and therefore the district court was right in refusing to foreclose the lien under this improvement certificate.—Affirmed.

ANDERSON, C. J., and DONEGAN, KINTZINGER, POWERS, RICHARDS, and HAMILTON, JJ., concur.